THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIELA VANCO, et al.
*Plaintiffs*,

v.

J.P. MORGAN CHASE BANK, N.A.
*Defendant.*

Civil Action No. ELH-16-3682

## MEMORANDUM

On September 14, 2016, plaintiffs Daniela and Bohumil Vanco (the "Vancos") brought suit in the Circuit Court for Baltimore County against defendant "J.P. Morgan Chase Bank, National Association" ("Chase").[1]  ECF 2.  The suit is rooted in a temporary freeze on the proceeds of a cashier's check issued by Chase and deposited into plaintiffs' joint account at Bank of America, N.A. ("BOA").  ECF 13.  According to plaintiffs, the hold was made at the direction of Chase.  *Id.* ¶ 3.  Plaintiffs filed an Amended Complaint in State court on or about October 7, 2016.  ECF 3; *see* ECF 1, ¶ 2.  Thereafter, on November 10, 2016, Chase removed the case to this Court.  ECF 1.[2]

Chase moved to dismiss the case on November 11, 2016, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 11.  On November 22, 2016, while the first motion to dismiss was pending, the

---

[1] Chase states that plaintiffs erroneously sued J.P. Morgan Chase Bank, N.A., and that the proper name of defendant is JPMorgan Chase Bank, N.A.  ECF 1 at 1.  Chase was never served with the original Complaint.  ECF 1.

In the Complaint, the Vancos also sued Bank of America, N.A.  ECF 2.  But, Bank of America, N.A. is not named as a defendant in either the First Amended Complaint (ECF 3) or the Second Amended Complaint (ECF 13).

[2] Chase was served with the Amended Complaint on October 11, 2016.  ECF 1.  There is no contention that removal was untimely.

Vancos filed a Second Amended Complaint. ECF 13.[3] In the Second Amended Complaint, the Vancos assert two statutory counts against Chase: breach of the Expedited Funds Availability Act ("EFAA"), as amended, 12 U.S.C. § 4001, *et seq.* (Count I), and breach of Md. Code (2013 Repl. Vol., 2016 Supp.), Titles 3 and 4 of the Commercial Law Article ("C.L.") (Count II). ECF 13, ¶¶ 6-18.[4]

Now pending is Chase's second motion to dismiss (ECF 18), which is supported by a memorandum of law. ECF 18-1 (collectively, "Motion"). The Vancos oppose the Motion (ECF 19, "Opposition") and Chase has replied. ECF 24 ("Reply").

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual Background

On June 3, 3016, Chase issued a cashier's check (check no. 9590201040 "Check") to Daniela Vanco in the amount of $851,552.00. ECF 13, ¶ 1; *see* ECF 13-1 (Check). The next day, June 4, 2016, the Check was deposited into plaintiffs' joint checking account with Bank of America. ECF 13, ¶ 2. June 4, 2016, was a Saturday. Plaintiffs allege, *id.*: "After the Plaintiffs deposited the Check into their BOA checking account, BOA sent the Check to Chase for payment. Chase paid the Check by transferring the funds to BOA."

According to plaintiffs, the Check was credited to the their joint checking account at BOA on June 6, 2016. *Id.* ¶ 3. That date was a Monday.[5] Plaintiffs transferred "the majority of

---

[3] ECF 11 will be denied as moot in view of the filing of the Second Amended Complaint.

[4] The First Amended Complaint contained four common law claims against Chase.

[5] I take judicial notice that June 4, 2016, was a Saturday, and June 6, 2016, was a Monday. In general, "a court may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v.*

the funds from their joint checking account to their joint savings account" on June 13, 2016. *Id.* Around that time, the Vancos became "unable to access their funds as BOA had wrongfully 'frozen' the money held in both the checking and savings accounts." *Id.* The Vancos claim that the hold on the accounts "was at the demand of Chase or as a result of information given by Chase to BOA about the Check." *Id.*

## II. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the well-pleading allegations are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see*

---

*Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Hall v. DirecTV, LLC*, ___F.3d ___, No. 15-1857, 2017 WL 361065, at *4 (4th Cir. Jan. 25, 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S.

265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 1960 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555–56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

Under limited exceptions, a court may consider documents outside the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those

attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

### III.    Discussion

In the Motion, Chase argues that each count of the Second Amended Complaint fails to state a claim upon which relief can be granted. I review each, in turn.

### A.  Count I – EFAA

In Count I of the Second Amended Complaint, the Vancos assert that Chase violated the EFAA by sending "wrong, illegal, incomplete and erroneous information and/or communications to BOA which caused BOA to freeze the Plaintiffs' accounts." ECF 13, ¶ 9. Moreover, the Vancos assert, *id.* ¶ 10: "Chase breached its statutory obligations and agreement with the

Plaintiffs to pay the Check when presented and to not cause the funds to be frozen and it also

breached its duties and obligations of good faith and ordinary care."

Plaintiffs do not identify the particular section of the EFAA, or its implementing

regulations, that was allegedly breached by Chase. *See* ECF 13. They seek statutory damages of

up to $1,000, plus expenses, costs, and attorneys' fees. *Id*. ¶ 11.

The EFAA was enacted by Congress to "provide faster availability of deposited funds."

*Beffa v. Bank of W.*, 152 F.3d 1174, 1176 (9th Cir. 1998) (citing S. Rep. No. 100-19, at 25).

Section 4002 of Title 12 of the U.S. Code is titled "Expedited funds availability schedules." It

provides, in pertinent part, 12 U.S.C. § 4002(a)(2): "Funds deposited in an account at a

depository institution by check shall be available for withdrawal not later than the business day

after the business day on which such funds are deposited . . . ." *See also* 12 C.F.R. § 229.10 ("A

depositary bank shall make funds deposited in an account by check available for withdrawal not

later than the business day after the banking day on which the funds are deposited . . . .").

Civil liability under the EFAA is codified at 12 U.S.C. § 4010. Section 4010(a) provides:

> Except as otherwise provided in this section, any depository institution which fails
> to comply with any requirement imposed under this chapter or any regulation
> prescribed under this chapter with respect to any person other than another
> depository institution is liable to such person . . . .

In the Motion, Chase contends that the Second Amended Complaint fails to state a claim

under the EFAA because the proceeds of the Check were made available to the Vancos within

one business day of the deposit. ECF 18-1 at 8. Thus, Chase argues that it complied with the

requirements of the EFAA. *Id.* Moreover, Chase asserts that any action that it took to place a

hold on the funds after the proceeds became available does not constitute a violation of the

EFAA. *Id*.

In their Opposition, the Vancos dispute Chase's contentions. As to Chase's argument that there was no breach under the EFAA because the funds from the Check were made available the next day, the Vancos contend: "Not only were the funds not available quickly they were not available at all as a result of Chase's wrongful acts." *Id.* Furthermore, the Vancos argue that the case of *Real Estate Auctions, Inc. v. Nat'l Republic Bank of Chicago*, No. 90 C 4174, 1991 WL 268659 (N.D. Ill. Dec. 3, 1991), supports their position.

In *Real Estate Auctions*, the defendant bank had issued a cashier's check to a third party who indorsed the check to the plaintiff as a part of a deal between the third party and the plaintiff. *Id.* at *1. After the deal between the third party and the plaintiff fell through, the third party called defendant and obtained a stop order on the check. *Id.* Plaintiff attempted to deposit the check with defendant, but as a result of the stop order, defendant refused to honor the check. *Id.* Plaintiff brought suit under the EFAA.

The court granted summary judgment in favor of plaintiff, finding that the bank had failed to timely make the funds from the cashier's check available to the plaintiff. *Id.* at *4. In so holding, the court observed that there was no dispute that defendant had failed to timely credit the plaintiff's account. *Id.* And, the court noted that the dispute between the plaintiff and the third party was better adjudicated by the courts than the bank. *Id.*

In my view, the allegations in the Second Amended Complaint do not state a claim for a breach of the EFAA. Under the EFAA, "business day" is defined as "any day other than a Saturday, Sunday, or legal holiday." 12 U.S.C. § 4001(3). As noted, in the Second Amended Complaint, the Vancos contend that they deposited the Check into their joint checking account at BOA on June 4, 2016, and that the "Check was credited to [their] joint checking account at BOA on June 6, 2016." ECF 13, ¶¶ 2-3. June 4, 2016, fell on a Saturday. And, June 6, 2016, fell on a

Monday. Thus, there was no breach of the requirement that the proceeds of a cashier's check be made available for withdrawal no later than the business day after the banking day on which the funds were deposited. 12 U.S.C. § 4002(2).

Plaintiffs' statement in their Opposition that the funds from the Check were not available quickly and "were not available at all as a result of Chase's wrongful acts" (ECF 19 at 3) is perplexing in view of the allegations in the Second Amended Complaint. To be sure, the freeze on plaintiffs' account would have made the funds unavailable during the period of the freeze. But, the statement that the funds were not available quickly flies in the face of the allegations in the Second Amended Complaint. As noted, the Vancos assert that their account was credited on June 6, 2016, which was a Monday. It was also the first business day after the deposit of the Check on Saturday, June 4, 2016. Moreover, plaintiffs were able to transfer the funds to another BOA account shortly thereafter. ECF 13, ¶¶ 2, 3.

To the extent that Chase provided BOA with information that resulted in a hold being placed on the Vancos' account, such conduct does not constitute a breach of the EFAA because "merely placing a hold on or freezing funds in an account after deposits have been made available is not a violation of the EFAA and does not support a claim for civil liability." *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 587 (D. Md. 2016); *see also Little Donkey Enterprises Washington, Inc. v. U.S. Bancorp*, 136 Fed. App'x 91, 92 (9th Cir. 2005) ("Merely placing a hold on or freezing funds in an account after the deposits have been made available is not a violation of the Funds Act and thus does not support a claim for civil liability under 12 U.S.C. § 4010."); *Anderson v. USAA Fed. Sav. Bank*, No. CA 8:13-1316-TMC, 2013 WL 4776728, at *2 (D.S.C. Sept. 4, 2013) (applying the Ninth Circuit's approach in *Little Donkey*).

Judge Messitte's opinion in *Nix*, 200 F. Supp. 3d 578, provides guidance. In that case, Nix, the plaintiff, electronically deposited a tax refund of $544,387.99 in an account that he had opened with defendant NASA Federal Credit Union ("NASA FCU"). *Id.* at 582. Ten days later, Nix scheduled payments to his creditors totaling $38,327.99. *Id.* Suspicious of the size of the transfer and payments, NASA FCU stopped the payments and placed a hold on Nix's account. *Id.* Nix brought suit against NASA FCU, claiming, *inter alia*, that it refused to timely make his funds available to him, in violation of the EFAA. *Id.* at 584.

Judge Messitte granted NASA FSU's motion to dismiss, with prejudice, as to Nix's claim under the EFAA. *Id.* at 587. He noted that many courts have determined that merely placing a hold or freezing funds in an account after a deposit has been made does not constitute a violation of the EFAA. *Id.* Therefore, Judge Messitte determined that NASA FCU had not breached the EFAA because it had merely "placed a hold on or frozen funds in an account after the deposits had been made available." *Id.* (internal quotations, citation, and alterations omitted).

Here, as in *Nix*, there is no dispute that the proceeds of the deposit in question became available to the plaintiffs on the first business day after funds were deposited. *See* ECF 13, ¶ 3. Indeed, the Vancos assert in the Second Amended Complaint that they were able to transfer the funds from their joint checking account to their joint savings account. *Id.* Therefore, for the reasons stated in *Nix*, the Vancos cannot maintain an action under the EFAA because the hold was placed on their funds after the funds from the Check had become available.

The Vancos' reliance on *Real Estate Auctions*, 1991 WL 268659, is misplaced. In that case, the defendant bank dishonored the check at issue before the funds were made available in plaintiff's account. *Id.* at *1. This distinction is critical given that *Nix* and related cases make

clear that there cannot be an EFAA violation when funds are frozen *after* they become available following a deposit. *See Nix*, 200 F. Supp. 3d at 587.

In view of the foregoing, I shall dismiss the Vancos' claim under the EFAA, with prejudice, because it fails as a matter of law.

## B.  Count II – UCC

In Count II of the Second Amended Complaint, the Vancos assert that Chase "had the statutory obligation" under C.L. Titles 3 and 4 "to pay the Check and to take no action which would prevent the Plaintiffs from having the funds freely available to them for their use." ECF 13, ¶ 15.  As with the alleged breach of the EFAA, plaintiffs complain that Chase "sent incomplete and erroneous information and/or communications to BOA which caused BOA to freeze the Plaintiffs' accounts." *Id.* ¶ 16.  However, the Vancos do not allege that Chase breached any particular section of the Maryland Code.  Instead, they cite to two entire titles of the C.L., which comprise nearly 175 pages.

Presumably, the Vancos assert their claims in Count II under C.L. § 3-411 and/or C.L. § 3-412, which pertain to the obligations of issuers of cashier's checks.

C.L. § 3-411 states:

(a) In this section, "obligated bank" means the acceptor of a certified check or the issuer of a cashier's check or teller's check bought from the issuer.

(b) If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment of a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.

C.L. § 3-412 provides:

The issuer of a note or cashier's check or other draft drawn on the drawer is obliged to pay the instrument (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or (ii) if the issuer signed an incomplete instrument, according to its terms when completed, to the extent stated in §§ 3-115 and 3-407. The obligation is owed to a person entitled to enforce the instrument or to an indorser who paid the instrument under § 3-415.

According to the Maryland Court of Special Appeals, "[t]he general rule [is] that the act of issuing a cashier's check *binds* the issuing bank to pay the instrument and the bank is not allowed to stop payment on it.'" *Citibank Fed. Sav. Bank v. New Plan Realty Trust*, 131 Md. App. 44, 59, 748 A.2d 24, 31–32 (2000) (quoting *Rezapolvi v. First Nat. Bank of Maryland,* 296 Md. 1, 8, 459 A.2d 183, 188 (1983)) (emphasis and alterations in *Citibank Fed. Sav. Bank*). And, in *Rezapolvi*, the Maryland Court of Appeals noted: "Courts have recognized and given effect to the public perception of a cashier's check. According to one court, a cashier's check circulates in the commercial world as the equivalent of cash . . . . People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual." *Rezapolvi*, 296 Md. at 9, 459 A.2d at 187 (internal quotations and citation omitted).

Notably, under C.L. § 3-602, "Payment to the holder of a cashier's check, teller's check, or certified check discharges the obligation of the obligated bank on the check to both the holder and the claimant . . . ." *Comment* to C.L. § 3-602; *see also Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 729, 63 A.3d 40, 48 (2013) (observing that if the maker of an instrument "pays a person entitled to enforce that [instrument], the maker's obligations under the note are discharged to the extent of the payment").

Chase argues that Count II is subject to dismissal because the Vancos have failed to make any allegations in the Second Amended Complaint on which they can obtain relief under C.L. Titles 3 or 4. ECF 18-1 at 8-11. In particular, Chase contends that it satisfied all of its

obligations under the C.L. 3-412. *Id.* at 9. Chase points out: "It is undisputed that [it] paid the Cashier's Check and the funds were credited to Plaintiffs' joint checking account." *Id.* (citing ECF 13 ¶¶ 2-3). And, Chase maintains that payment of the Check "refutes any possible allegation that it [refused] to pay the Check under Section 3-411(b)." ECF 18-1 at 9.

Citing C.L. § 3-411(b), the Vancos point out in their Opposition that Chase, as the obligor bank, "cannot wrongfully refuse to pay a cashier's check." ECF 19 at 5. According to the Vancos, "[t]he action of Chase was, or amounted to, a wrongful refusal to pay or a stop payment and as such was in violation of the Uniform Commercial Code including §3-411." *Id.* The Vancos continue, *id.*: "Under the UCC Chase was obligated to pay on the [C]heck but did not make final settlement as final payment was not made."

In my view, the Vancos have failed to state a claim under Titles 3 and 4 of the C.L. As noted, the Vancos specifically allege in the Second Amended Complaint that Chase "**paid** the Check by transferring the funds to BOA" (ECF 13, ¶ 2) (emphasis added) and that "[t]he Check was credited to the Plaintiffs' joint checking account at BOA . . . ." *Id.* ¶ 3. Further, plaintiffs aver that they transferred money from their joint checking account to their joint savings account. *Id.* Thus, based on the Vancos' own allegations, Chase fulfilled its obligation under C.L. § 3-411(b) by paying the Check. *See id.* ¶ 3. And, by paying the check, Chase's obligations were discharged. C.L. § 3-602.

The Vancos' arguments in their Opposition are bewildering. Plaintiffs' argument that Chase's actions amounted to a wrongful refusal to pay the Check is unfounded in fact and in law. As Chase notes in its Reply, C.L. § 3-411(b) requires the obligor bank not to refuse to pay a cashier's check or to stop payment on a cashier's check. *See* ECF 24 at 5-6. Indeed, the Second Amended Complaint specifically provides that Chase paid the Check. ECF 13, ¶ 2.

Likewise, plaintiffs' allegation in their Opposition that Chase failed to make final settlement on the Check is similarly defective. No reading of the Second Amended Complaint could yield the conclusion that Chase failed to make final payment on the Check by maintaining the right to revoke the settlement of the funds with BOA. C.L. § 4-215(a)(2); *see* ECF 13, ¶¶ 2-3.

In sum, the Vancos have failed to state a claim for a breach of Titles 3 and 4 of the Commercial Law Article. Therefore, I shall dismiss Count II of the Second Amended Complaint. And, the dismissal shall be with prejudice. This is because the Vancos, in their Opposition, appear to agree with Chase that C.L. § 3-411 is the section of the Commercial Law Article on which Count II is predicated. ECF 19 at 4-5. They have not suggested another section, for which an opportunity to amend might be warranted. Moreover, dismissal with prejudice is appropriate because the Vancos have already had three proverbial "bites at the apple" in terms of amending their lawsuit.

### IV.    Conclusion

In view of the foregoing, I shall grant the Motion and shall dismiss Counts I and II of the Second Amended Complaint, with prejudice, as plaintiffs have failed to state a claim on which relief could be granted.

An Order follows, consistent with this Memorandum.


Date:  4/14/17                                                          /s/
                                                            Ellen Lipton Hollander
                                                            United States District Judge